IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____
                                    )
ROBERT CORAL,                       )
                                    )
    Petitioner,                     )
                                    )
        v.                          )        No. 2:05cv1112-MEF
                                    )
RICHARD ALLEN, Commissioner,        )
    Alabama Department of           )
    Corrections, *et al.*,          )
                                    )
    Respondents.                    )
_____)


**PETITIONER'S BRIEF ON PROCEDURAL DEFAULT AND ON THE MERITS**


LaJuana Davis
Equal Justice Initiative of Alabama
122 Commerce Street
Montgomery, Alabama 36104
334-269-1803
Fax: 334-269-1806
E-mail: ldavis@eji.org

Counsel for Robert Coral


August 16, 2006

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I.     INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    THE STATE COURT PROCEEDINGS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   RESPONDENTS' PROCEDURAL DEFAULT CLAIMS  . . . . . . . . . . . . . . . . 9

IV.    GROUNDS FOR RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       CLAIM A     Mr. Coral's Statements to Police Were Admitted in Violation of the
                   Constitution, petition ¶¶ 9-19 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       CLAIM B     The State's Tardy Disclosure at Trial of a Witness' Police Statement
                   Was a Brady Violation, petition ¶¶ 20-24  . . . . . . . . . . . . . . . . . . 18

       CLAIM C     Coral's Speedy Trial Rights Were Violated, petition ¶¶ 25-26  . . . 21

       CLAIM D     Coral's Pretrial Detention Violated the Eighth and Fourteenth
                   Amendments, petition ¶¶ 27-29. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       CLAIM E     The Racially Discriminatory Use of Peremptory Challenges at Trial
                   Violated Coral's Constitutional Rights, petition ¶¶ 30-34.  . . . . . . 23

       CLAIM F(1)  The Guilt Phase Instructions on Reasonable Doubt Violated *Cage v.
                   Louisiana* and the Eighth and Fourteenth Amendments, petition ¶¶ 35-
                   36  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

       CLAIM F(2)  The Penalty Phase Reasonable Doubt Instructions Violated Cage v.
                   Louisiana and the Eighth and Fourteenth Amendments, petition
                   ¶ 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

       CLAIM G     The Presence of a Victim's Relative at the Prosecution's Table at Trial
                   Denied Coral a Fair Trial, petition ¶¶ 39. . . . . . . . . . . . . . . . . . . 29

       CLAIM H     The Trial Court's Penalty Phase Mitigation Instructions Violated Mills
                   v. Maryland and the Eighth and Fourteenth Amendments, petition ¶¶

40-41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CLAIM I(1)   The Prosecution Improperly Argued that Its Version of the Events Was the Truth, petition ¶ 43-44. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CLAIM I(2)   The Prosecution Improperly Argued that An Eyewitness Told the Truth When It Knew that the Witness' Testimony Was, In Part, False, petition ¶ 44. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CLAIM I(3)   The Prosecution Improperly Commented Upon Coral's Right Not to Testify, petition ¶¶ 45-46. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CLAIM I(4)   The Cumulative Effect Of the Allegedly Improper Remarks, petition ¶ 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CLAIM J(1)   The Judicial Override Violated Coral's Sixth, Eighth and Fourteenth Amendment Rights, petition ¶¶ 47-51. . . . . . . . . . . . . . . . . . . . . . . 35

CLAIM J(2)   The Trial Court's Rejection Of The Jury Verdict Of Life Without Parole Violates the Supreme Court's Holding In Ring v. Arizona, petition ¶ 48 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CLAIM J(3)   The Judicial Override In Coral's Case Was A Violation Of The Equal Protection Clause, petition ¶ 49 . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CLAIM J(4)   Alabama Has No Mechanism To Insure That Defendants Sentenced To Life Without Parole Are Treated Alike, petition ¶ 50 . . . . . . . . . . 37

CLAIM J(5)   Alabama Appellate Courts Have Not Developed A Mechanism For Determining When An Override Is Appropriate, petition ¶ 51 . . . 37

CLAIM K     The Trial Court's Consideration of a Prejudicial Presentence Report Violated Coral's Constitutional Rights, petition ¶¶ 52-55. . . . . . . 41

CLAIM L     The Jury Pool from which Coral's Jury Was Selected Underrepresented African-Americans, petition ¶¶ 56-58. . . . . . . . . . . . . . . . . . . . . . . 42

CLAIM M     Mr. Coral's Death Sentence Was Sought and Imposed Pursuant to a Pattern of Racial Bias, petition ¶¶ 59. . . . . . . . . . . . . . . . . . . . . . . 43

CLAIM N     Coral's Fair Trial Rights Were Violated By the Trial Court's Refusal

to Grant Individually-Sequestered Voir Dire, petition ¶ 60.  . . . . . 44

CLAIM O(1) Mr. Coral Was Denied the Effective Assistance of Counsel Because of
Alabama's Capital Compensation Scheme, petition ¶¶ 62-64.  . . . 45

CLAIM O(2) Coral's Trial Counsel Was Ineffective for Failing to Object Adequately
to the Override of the Jury's Sentence, petition ¶¶ 65-66. . . . . . . . 46

CLAIM O(3) Coral's Trial Counsel Failed to Investigate Mitigation Evidence by
Interviewing Coral's Family Members, petition ¶¶ 67-69.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

CLAIM O(4) Trial Counsel Failed to Adequately Challenge the Underrepresentation
of African-Americans in Coral's Jury Pools, petition ¶ 70. . . . . . . 52

CLAIM O(5) Trial Counsel Failed to Adequately Object to the Admission of a
Prejudicial Presentence Report, petition ¶ 71. . . . . . . . . . . . . . . . 53

CLAIM O(6) Trial Counsel Failed to Adequately Object to Racially Discriminatory
Use of the Death Penalty in This Case, petition ¶ 72-73. . . . . . . . . 53

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CERTIFICATION OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

## TABLE OF AUTHORITIES

Armstrong v. Dugger, 833 F.2d 1430 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 49

Barker v. Wingo, 407 U.S. 514 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Batson v. Kentucky, 476 U.S. 79 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Baxter v. Thomas, 45 F.3d 1501 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Ex parte Beam, 512 So. 2d 723 (Ala. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Beck v. State, 396 So. 2d 645 (Ala. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Berger v. United States, 295 U.S. 78 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Blake v. Kemp, 758 F.2d 523 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Brady v. Maryland, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

Ex parte Burgess, No. 1980810 7, 10 (Ala. Aug. 25, 2000) . . . . . . . . . . . . . . . . . . . 40

Bush v. Gore, 531 U.S. 98 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Cage v. Louisiana, 498 U.S. 39 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

California v. Brown, 479 U.S. 538 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Callahan v. State, 767 So. 2d 380 (Ala. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . . 9

Cave v. Singletary, 971 F.2d 1513 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 49

Chavez v. State, 539 N.E.2d 4 (Ind. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Collier v. Turpin, 177 F.3d 1184 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Ex parte Coral, No. 1031798 (Ala. Nov. 19, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Coral v. State, 900 So. 2d 1274 (Ala. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . 10

Crowe v. State, 485 So. 2d 351 (Ala. Crim. App.) . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Daniel v. Thigpen, 742 F. Supp. 1535 (M.D. Ala. 1990) . . . . . . . . . . . . . . . . . . . . . . 11

Dobbert v. Florida, 432 U.S. 282 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Duncan v. State, 575 So. 2d 1198 (Ala. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . . . . 40

Eddings v. Oklahoma, 455 U.S. 104 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Edwards v. Arizona, 451 U.S. 47 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Edwards v. Arizona, 451 U.S. 477 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Ford v. Wainwright, 477 U.S. 399 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Freeman v. State, 555 So. 2d 196 (Ala. Crim. App. 1988) . . . . . . . . . . . . . . . . . . . . . . 42

Fuselier v. State, 468 So. 2d 45 (Miss. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Gardner v. Florida, 430 U.S. 349 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 50

Giglio v. United States, 405 U.S. 150 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Ex parte Grayson, 479 So. 2d 76 (Ala. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Green v. Georgia, 442 U.S. 95 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Griffin v. Illinois, 351 U.S. 12 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Guthrie v. State, 616 So. 2d 914 (Ala .Crim. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . 37

Hallford v. State, 548 So. 2d 536 (Ala. Crim. App. 1988) . . . . . . . . . . . . . . . . . . . . . . 37

Harper v. Virginia State Board of Education, 383 U.S. 663 (1966) . . . . . . . . . . . . . . 40

Harris v. Alabama, 513 U.S. 504 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

Harris v. Dugger, 874 F.2d 756 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Horton v. Zant, 941 F.2d 1449 (11th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Irvin v. Dowd, 366 U.S. 717 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Jackson v. Herring, 42 F.3d 1350 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49

Jones v. State, 456 So. 2d 366 (Ala. Crim. App. 1983) . . . . . . . . . . . . . . . . . . . . . . . . 40

King v. Strickland, 714 F.2d 1481 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Kyles v. Whitley, 514 U.S. 419 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Magill v. Dugger, 824 F.2d 879 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

McCleskey v. Kemp, 481 U.S. 279 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 51

Mills v. Maryland, 486 U.S. 367 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Minnick v. Anderson, 151 F. Supp. 2d 1015 (N.D. Ind. 2000) . . . . . . . . . . . . . . . . . 41

Minnick v. Mississippi, 498 U.S. 146 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Miranda v. Arizona, 384 U.S. 436 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Mississippi Valley Title Insurance Co. v. Hooper, 707 So. 2d 209 (Ala. 1997) . . . . . . . 9

Mooney v. Holohan, 294 U.S. 103 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Murry v. State, 455 So. 2d 53 (Ala. Crim. App. 1983) . . . . . . . . . . . . . . . . . . . . . . . . 41

Musgrove v. State, 519 So. 2d 565 (Ala. Crim. App. 1986) . . . . . . . . . . . . . . . . . . . . 41

Penry v. Lynaugh, 492 U.S. 302 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Proffit v. Wainwright, 685 F.2d 1500 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . 43, 50

Proffitt v. Florida, 428 U.S. 242 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Prothro v. State, 370 So. 2d 740 (Ala. Crim. App. 1979) . . . . . . . . . . . . . . . . . . . . . 37

Ring v. Arizona, 536 U.S. 584 (2002)] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Schriro v. Summerlin, 524 U.S. 348 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 38

Skinner v. Oklahoma, 316 U.S. 535 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

South Carolina v. Gathers, 490 U.S. 805 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Spaziano v. Florida, 468 U.S. 447 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

State v. Henry, 198 So. 910 (La. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Stevens v. Zant, 968 F.2d 1076 (11th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Strickland v. Washington, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  52

Taylor v. Louisiana, 419 U.S. 552 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43, 50

Tedder v. State, 322 So. 2d 908 (Fla. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

Thiel v. Southern Pacific Co., 328 U.S. 217 (1946) . . . . . . . . . . . . . . . . . . . . . . . .  43, 50

Trujillo v. Sullivan, 815 F.2d 597 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . .  46

Turner v. Murray, 476 U.S. 28 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

United States v. Bagley, 473 U.S. 667 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

United States v. Salerno, 481 U.S. 739 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Wainwright v. Sykes, 433 U.S. 72 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Walker v. State, 132 Ga. App. 476 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

Ex parte Williams, 556 So. 2d 744 (Ala. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

Williams v. Taylor, 529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Witherspoon v. Illinois, , 391 U.S. 510 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

Woodson v. North Carolina, 428 U.S. 280 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

I.    INTRODUCTION

Robert Coral submits this brief addressing the Respondents' procedural default arguments and advancing the merits of his habeas corpus claims. This is a death penalty case. Mr. Coral was convicted by a Montgomery County jury and condemned to die by a trial judge for the robbery-murder of Nancy Burt in 1989. Mr. Coral seeks federal review of his claims of constitutional impropriety and for the court to grant a writ of habeas corpus in his case.

When he tried to present facts supporting his constitutional claims in state court, the State claimed that newly announced state rules had not been followed. Now in federal court the Respondents are relying on claims of procedural bar to circumvent this Court's examination of the merits.

While Mr. Coral's trial and appellate counsel's failure to raise federal constitutional issues in state court did result in the preclusion of a number of federal claims, many others are not barred by any procedural default. The Anti-Terrorism and Effective Death Penalty Act (AEDPA) did change the law on when habeas hearings are to be held and how to consider claims of error, it did not, as the Respondents would have it, abandon the need for hearings nor render habeas relief unavailable. Mr. Coral's case presents issues of constitutional impropriety which this Court can and must review. "[E]rrors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ." *Williams v. Taylor*, 529 U.S. 362, 375

1

(2000). Such errors have tainted Mr. Coral's conviction and sentence of death and require this Court's careful scrutiny.

## II.    THE STATE COURT PROCEEDINGS

Robert Coral was convicted of the burglary-murder of Nancy Burt, a capital offense under Ala. Code § 13A-5-40 (a)(4) (1975). Mr. Coral's jury declined to find him guilty of capital murder on the first (and sole other) count of the indictment, robbery-murder.

There was no physical evidence that linked Robert Coral to the crime, a fact that is notable considering that the victim appeared to have resisted her attacker. There were no eyewitnesses to the crime. Some of the State's other evidence was also problematic. The major part of the State's case came in the form of testimony from William Braden, an Illinois acquaintance of Mr. Coral. Following Mr. Braden's cooperation with law enforcement authorities, he was allowed to take Mr. Coral's automobile, even though Mr. Braden had no lawful right to the car. (Vol. 6, state court trial at R. 1162.) Mr. Braden testified that Mr. Coral admitted committing the crime and disposed of some of the victim's property in his presence. Additionally, a child witness who originally told the police that he had seen a white man emerge from a white car and enter the victim's apartment recanted his statement at trial after coaching from his father.

Mr. Coral's jury voted for life imprisonment without parole. The trial court overrode the jury's life verdict and imposed a death sentence. (Vol. 6, state court trial at R. 1944-45.)    On appeal, Mr. Coral's case was remanded twice by the Court of

2

Criminal Appeals, both times for the trial court to satisfy the statutory requirement of articulating the grounds justifying a death sentence. The Court of Criminal Appeals also vacated his conviction for robbery-murder.

Mr. Coral filed his Rule 32 petition on September 1, 1995. The State of Alabama answered the petition and filed a motion for partial dismissal. (Vol 16, Tab# 61 at 65-72.) In its motion, the State claimed that the following claims were not sufficiently pled under Rule 32.6 of the Alabama Rules of Criminal Procedure:

A - underrepresentation of African-Americans on the grand jury pools;

C - double jeopardy;

G - improper photographs;

J - prosecutorial misconduct; and

L - judicial bias.

The State also alleged subsections of Mr. Coral's claim of ineffective assistance of counsel (claim M) should have been dismissed under Rule 32.6.[1] After Mr. Coral filed a

---

[1] The State sought to preclude the following subsections of the ineffective assistance of counsel claims:

(a) - defense did not properly prepare an adequate defense against imposition of the death penalty;
(b) - failure to present an adequate defense strategy;
(c) - failure to cross-examine prosecution witnesses adequately;
(d) - failure to prepare and present evidence properly for pretrial motions;
(e) - failure to challenge the systematic underrepresentation of black persons on the grand jury venire;
(f) - failure to question venirepersons and exercise strikes in an adequate manner;
(g) - failure to call mental health expert witnesses at the guilt phase of Mr. Coral's trial;
(h) - failure to develop an adequate theory of mitigation at the penalty phase;
(i) - trial counsel failed to interview family members about mitigation evidence and present them

3

response (Vol 18, Tab# 62 at 104-08) to the State's motion, the circuit court ordered that Mr. Coral would have 60 days to amend the petition.  (Vol 16, Tab# 71 at 109.) The circuit court also granted Mr. Coral's motions for discovery.  Mr. Coral filed an amended petition, and the State filed another motion for partial dismissal based on Rule 32.6. (Vol 16, Tab# 65 at 170.)

The State filed a proposed order and memorandum opinion (Vol. 17, Tab# 69 at 240-60), to which Mr. Coral filed a response and objections to the proposed order.  (Vol. 18, Tab# 68 at 221.)  On July 1, 1996, the circuit court held a hearing on the State's second motion for partial dismissal.  (Vol. 18, Tab# R-71 at 2.)  At the July 1 hearing before Montgomeryy County Circuit Court Judge Randall Thomas, the State's attorney was directly asked what additional facts did the State need to know to respond to these claims, the Assistant Attorney General replied that the phrase "included, but was not limited to" in claims E, F, G, J and K and N left the State without notice of the full range of conduct being challenged in the petition.  (*See* PCR. 172.)  While petitioner disagreed with the State's position that this language rendered these claims factually insufficient (particularly considering that discovery had not been completed in this case), Mr. Coral filed an amended petition on September 5, 1996, deleting the language.  Because the Respondent raised no other factual insufficiency objection to claims F, G, and K, and N

---

at the penalty phase;

(j) - trial counsel failed to call mental health expert witnesses to testify about mitigation;

(l) - trial counsel failed to object to the use of improper and invalid convictions that were used to negate the mitigating circumstance of no significant prior criminal history; and

(n) trial counsel failed to object properly to the imposition of the death penalty.

(*see* PCR. 172), most of Mr. Coral's petition has been dismissed for lack of factual specificity on grounds other than what were presented in the circuit court. (The State's factual specificity contentions regarding claims E and J are discussed below; the ineffective assistance of counsel claims in section K of the petition are also discussed below.) No valid ground for dismissal of these claims existed.

The following dialogue confirms the circuit court's request that Mr. Coral file an amended petition:

> BY MS. DAVIS:        I say in response to the claim, it clearly states what the testimony was, it gives a reference to the trial transcript for that testimony.
>
> I put in there the language, "not limited to", because I didn't want to be hemmed in by just saying this one incident, without reviewing all of the discovery in this case.
>
> Now, if Your Honor would like me to strike the "but limited to", I would be glad to do that.
>
> BY MS. HUGHES:        If she wants to do that, then we'll say there's a sufficient factual basis.
>
> BY MS. DAVIS:        Okay, I'll do that if Your Honor requires that.
>
> BY THE COURT:        Okay, why don't you do that.

(PC-RR. 9.) Furthermore, the final discussion at the July hearing concerned a discovery matter (*see* PCR-RR. 22), which indicates that the circuit court did not view the case as decided at that point.

5

Therefore, Mr. Coral amended his Rule 32 petition in response to a direct invitation by the circuit court. In fact, this was Mr. Coral's first opportunity to do so as the State's attorney did not raise this particular objection to the ineffectiveness claim at the prior hearing:

| | |
|---|---|
| BY MS. HUGHES: | We're not asking that all the claims in the petition be dismissed, just that the claims are barred. |
| BY THE COURT: | So, there's going to be some claims? |
| BY MS. HUGHES: | Yes, we're not asking that the ineffective assistance of counsel claims be dismissed. |

(PC-RR. 13, Apr. 3, 1996.)

No deadline was set for submitting the second amended Rule 32 petition. Furthermore, no argument can be made that the circuit court was somehow 'sandbagged' by this pleading because Mr. Coral filed his second amended petition *five years before* the circuit court issued final judgment. (*See* PC-CR. 1.)

On August 30, 2001, the State resubmitted the proposed opinion and order it had previously filed. On September 28, 2001, the circuit court denied relief in Mr. Coral's case. (Vol. 17 at 266.) The circuit court's order found that there were only two viable claims in Mr. Coral's petition: (1) that Mr. Coral was denied the effective assistance of counsel because of the limits Alabama places on its compensation to court-appointed counsel in capital cases and (2) that Mr. Coral was denied the effective assistance of

6

counsel because trial counsel failed to adequately object to the admission of a prejudicial presentence report.

Mr. Coral appealed the denial of his Rule 32 petition to the Alabama Court of Criminal Appeals. The Court of Criminal Appeals below considered only Mr. Coral's first Rule 32 petition, which was amended twice before judgment (*see* PC-CR. 3), to make its determination that the petition lacked specificity. *Coral v. State*, 2004 WL 1178422 at *6 (Ala. Crim. App. May 28, 2004). In fact, as the Court of Criminal Appeals acknowledges in its opinion, Mr. Coral amended his petition by permission of the Court. 2004 WL 1178422 at *3. Mr. Coral's final amended petition, which was permitted by the circuit court and not objected to by the State, contained ample facts to support his claims of ineffective assistance of counsel. It should be also noted that the State did not move to strike Mr. Coral's second amended petition on timeliness grounds because the circuit court and the parties fully understood that an amended petition would be filed after the hearing.

However, Mr. Coral submits that the circuit court's statement referred to the discussion in the previous six pages that the substantive and ineffective assistance claims were procedurally barred under Ala. R. Crim. P. 32.2 (a)(2) or (a)(3) or (a)(5) or (*see* PC-RR-11-17.) The circuit court confirmed that substantive claims were being discussed when it said "[Even] if you give a sufficient factual basis [regarding these claims], it's barred." (PC-RR. 20.)

7

The Court of Criminal Appeals also decided that Mr. Coral filed his second amended petition "after the deadline for amending the petition had passed and after the hearing on the motion for a partial dismissal." *Coral v. State*, 2004 WL 1178422 at *5. However, the deadline cited by the Court refers to Mr. Coral's first amendment. Mr. Coral had already timely filed an amended Rule 32 petition in response to an earlier order at the time of the hearing on the motion for partial dismissal. Mr. Coral's second amended petition responded to the Court's concerns raised during the hearing on the State's motion for partial dismissal, not on the circuit court's order. Because Mr. Coral was amending to address issues raised at that hearing, the petition was filed subsequent to that hearing.

Mr. Coral may, under the law, incorporate facts by reference in his pleading. It is a common and accepted practice acknowledged by the Alabama courts themselves. *See Mississippi Valley Title Ins. Co. v. Hooper*, 707 So. 2d 209, 210 (Ala. 1997) (Alabama Supreme Court reviewed facts from original complaint that were "incorporated by reference" to determine whether a complaint was time-barred); *Callahan v. State*, 767 So. 2d 380, 402 (Ala. Crim. App. 1999) ("In his brief to this court, Callahan incorporates by reference the arguments he made concerning the ineffective assistance of trial counsel on the same issues.") In fact, the incorporation of facts and law was employed in the State's answer in the circuit court in this case. (*See* PCR-CR. 149-167: State's Answer to Amended Petition, incorporating paragraphs 6(a) and (b) into different responses).

In *Coral v. State*, the Court of Criminal Appeals used Mr. Coral's first Rule 32 petition to exemplify that his ineffective assistance of counsel claims lacked factual specificity. Although that Court recognized that Mr. Coral filed two subsequent amended petitions, the appellate court nonetheless references the first petition as if the amended petitions did not exist. The circuit court below may have failed to read the amended petition because the final order was written by the State's attorneys, but this does not amount to a rejection of the amended petition, as implied by the statement at 2004 WL 1178422 at *6 of the Court's opinion ("The circuit court did not abuse its discretion in failing to entertain this amended petition"). The Court of Criminal Appeals' opinion was clearly erroneous and is in direct contradiction of the established facts in the case.

The Court of Criminal Appeals affirmed the judgment on May 28, 2004 in *Coral v. State*, 900 So. 2d 1274 (Ala. Crim. App. 2004), *overruled in part by Ex parte Taylor*, 1040186, 2005 WL 2403729 (Ala. Sept. 30, 2005) (determination on direct appeal that there was no plain error for a substantive claim did not necessarily foreclose determination of the existence of prejudice under *Strickland v. Washington* for a related claim of ineffective assistance of counsel raised in a postconviction proceeding). An application for rehearing to the Court of Criminal Appeals was overruled on August 13, 2004. Mr. Coral petitioned the Alabama Supreme Court for a writ of certiorari; certiorari was denied on November 19, 2004 in *Ex parte Coral*, No. 1031798 (Ala. Nov. 19, 2004).

III.    RESPONDENTS' PROCEDURAL DEFAULT CLAIMS

9

The Respondents claim that claim I(2), paragraph 44 of the habeas petition, is procedurally defaulted because it was not raised at trial or on direct appeal. In claim I(2), Mr. Coral asserted that the prosecutor improperly argued that an eyewitness told the truth when it knew that the witnesses testimony was, in part, false. The Respondents submit that the state post-conviction court and the Alabama Court of Criminal Appeals held that this claim was procedurally defaulted because it was not raised at trial or on direct appeal. But if the Court were to find a default, cause and prejudice would be found because trial and appellate counsel failed to raise and properly litigate the issue of the prosecution's improper argument. *Daniel v. Thigpen*, 742 F.Supp. 1535 (M.D. Ala. 1990) (ineffective assistance as cause for default). Mr. Coral was prejudiced by receiving a death sentence that is without proper foundation and would not otherwise have been imposed.

The Respondent further claim that claim J(2), paragraph 48 of the habeas petition [the trial court's rejection of the jury's life without parole sentence recommendation violates the Supreme Court's holding in *Ring v. Arizona*, 536 U.S. 584 (2002)]. Mr. Coral did present a Sixth Amendment challenge to the constitutionality of override in his state habeas petition, and therefore disputes the Respondents' position to the extent that they claim that it had "not been raised in any of the state court proceedings and is procedurally defaulted for that reason." However, although petitioner contends that the override in his case violated his Sixth Amendment rights, given the status of the law at this time he no longer asserts that his override challenge, to the extent that it is based on Ring, is a claim to which he can establish the right to habeas corpus relief. To the extent

10

that Mr. Coral relied on *Ring*, the Respondents are correct – the Supreme Court has held that *Ring* is not retroactive to collateral proceedings. *Schriro v. Summerlin*, 524 U.S. 348, 358 (2004).

Mr. Coral disputes the Respondents' position that claim J(3) paragraph 49 of the habeas petition [that the judicial override in his case violates the Equal Protection Clause] is procedurally defaulted. Mr. Coral submits that there is no procedural bar to the consideration of this claim because the Fourteenth Amendment was cited in Mr. Coral's arguments against override on direct appeal. Because this claim was presented in state court on direct appeal, it is properly before this Court for merits review. Tab #R-47 at 34-35.

One of Mr. Coral's claims on direct appeal challenged in the constitutionality of override. Mr. Coral argued in part that "Alabama courts have failed to recognize that a mechanism limiting discretion is integral to the constitutionality of [an] override" and that "the discretion of the sentencer has been adequately limited by statutory safeguards." Tab Tab# 47 at 37. Thus, there is no valid state procedural default of claim J(5), paragraph 51 of the habeas petition, that Alabama appellate courts have not developed a mechanism for determining when an override is appropriate.

The Respondents also object to claim J(4), paragraph 50 of the habeas corpus petition, because they assert that the claim (that Mr. Coral's claim that Alabama has no mechanism to insure that defendants sentenced to life without parole are treated alike) was not raised in the state courts. Mr. Coral submits that there is no procedural bar to the

11

consideration of this claim because  in his arguments against override on direct appeal, Mr. Coral incorporated the Fourteenth Amendment and cited cases that discussed equal protection concerns in the consideration of override.  Because this claim was presented in state court on direct appeal,  it is properly before this Court for merits review.

The Respondents argue that claim L (underrepresentation of African-Americans in the jury pool), paragraphs 56-58 of the habeas petition, was procedurally defaulted in state court because it was not raised at trial or on direct appeal.   Coral submits that this claim can be considered by this Court because ineffective assistance of his counsel at trial establishes cause and prejudice for the state default.

While the Respondents argue that claim M, paragraph 59 of the habeas petition, (that his death sentence is unconstitutional because it was sought and imposed pursuant to a pattern of racial bias), is procedurally defaulted, Mr. Coral submits that it is properly before this Court for merits review because the ineffective assistance of his counsel at trial establishes cause and prejudice for the alleged default.

Regarding claim O(2) (trial counsel was ineffective for failing to object adequately to the override of the jury's life without parole sentence recommendation), paragraphs 65-66 of the habeas petition, the Respondents argue that Mr. Coral asserts new factual support for this argument in the habeas petition – facts that were not presented to the state courts.

In addition, the Respondents argue that four claims are barred from federal habeas review under *Wainwright v. Sykes*, 433 U.S. 72 (1977), because they were decided under

an adequate and independent state procedural ground. These claims are: O(2) (trial counsel was ineffective for failing to object adequately to the override of the jury's life without parole sentence recommendation); O(3) (that trial counsel failed to investigate mitigation evidence by interviewing his family members); O(4), (Coral alleges that trial counsel failed to adequately challenge the underrepresentation of African-Americans in his jury pools); claim O(6), paragraphs 72-73 of the habeas petition, Coral asserts that trial counsel failed to adequately object to the racially discriminatory use of the death penalty in his case. therefore, procedurally defaulted and cannot be reviewed by this Court. Mr. Coral submits that the facts for this claim were sufficiently presented in his Rule 32 petition, that the Rule 32 petition and the federal habeas corpus petition contain the same facts in support of this claim, and therefore there was no procedural default. See Tab R-67 at C. 202. The state courts did find that this claim was insufficiently pled. However, this finding occurred after Coral amended his Rule 32 petition following the instructions of the original circuit court judge. After the retirement of this circuit court judge, a new judge dismissed Coral's claims, without any reference to Coral's amended petition or notice to Coral that it found the amended claims still lacked specificity under Ala.R.Crim.P. 32.6(b). On appeal from the Rule 32 denial, the state appellate court interpreted Ala.R.Crim.P. 32.6(b) in a manner that had not been previously announced before Mr. Coral's case. The state courts' treatment of his ineffective assistance of counsel claim was not based upon an adequate and independent state procedural ground.

13

For these four claims, the Respondents also argue that Mr. Coral presents new factual support in the habeas petition – facts that were not presented to the state courts and therefore are not properly before this Court for review.

In addition, the Respondents urge this court to deny review of these four claims because, according to the State, the claims were insufficiently pleaded under Rule 32.6(b) of the Alabama Rules of Criminal Procedure.

IV.    GROUNDS FOR RELIEF

**CLAIM A     Mr. Coral's Statements to Police Were Admitted in Violation of the Constitution, petition ¶¶ 9-19.**

Petitioner made several statements to police officers which were read to the jury at his trial and admitted into evidence against him.  Mr. Coral was interrogated by police officers after he had requested that counsel be made available to him.  The statements taken by Montgomery police officers Sergeant Clore (November 6, 1987) and Corporal Jett (November 11, 1987), were initiated by the police and came after Mr. Coral had earlier invoked his right to counsel with another officer.  (R. 240, 263)  Accordingly, Mr. Coral's statements should have been suppressed because of the State's violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966); *Edwards v. Arizona*, 451 U.S. 47 (1981).  It was improper for the officers to question him further after he had invoked his right to an attorney.  Thus, he was denied his rights against self-incrimination, to counsel,

14

and to a fair trial and sentencing under the constitutions of this state and the United States.

1.      The Marshall Statement

The first statement was obtained by Montgomery County detective D.T. Marshall on October 7, 1987. Detective Marshall approached Mr. Coral in the hallway of a Cook County, Illinois court where Mr. Coral was awaiting a probable cause hearing. When the Cook County charges against Mr. Coral were dismissed, Det. Marshall followed him to a Chicago police station where he interrogated Mr. Coral. Mr. Coral was handcuffed and in custody during this interrogation. (R. 255, 295.) Det. Marshall testified that he read Mr. Coral his rights from a *Miranda* card (State Exhibit 2) and that Mr. Coral acknowledged that he understood. Det. Marshall testified that immediately after he advised Mr. Coral of his rights, he interrogated Mr. Coral for over an hour and that he taped this conversation. R. 255; R. 1072.) This tape was later destroyed (R. 1076), however Det. Marshall testified he typed out a transcript of the interrogation. (R. 1073.)

At the start of the October 7 interrogation, Mr. Coral refused to sign a *Miranda* waiver card. (R. 1102.) According to Det. Marshall, Mr. Coral invoked his right to counsel on the next morning, October 8, 1987, and Det. Marshall ceased further questioning. (R. 263.)

Mr. Coral denied that Det. Marshall advised him of his *Miranda* rights prior to the October 7th taped statement. (R. 294.) Mr. Coral's testimony is supported by the absence Mr. Coral's signature on the *Miranda* waiver card. Mr. Coral's testimony is further

supported by the absence of any evidence from the taped interrogation indicating that Mr.

Coral was being or had been advised of his *Miranda* rights, or, for that matter, gave his

consent to the alleged taping of the interrogation. The tape transcript does reveal that

Officer Marshall began his interrogation by telling Mr. Coral: "What you lie to me about

or tell me the truth about--listen to me good--if you did do this it may make the difference

between you going to the electric chair or going to prison." (R. 266.)

Based on this record, the prosecution failed to meet its heavy burden to establish a

knowing and intelligent waiver of Mr. Coral's rights. The only evidence the prosecution

adduced was the testimony of Detective Marshall. Det. Marshall's testimony was not

supported by any other law enforcement official and was contradicted by Mr. Coral's

testimony. The only other record evidence--the unsigned Miranda waiver card and the

transcription of the interrogation fail to support a claim of waiver. To the contrary, during

the interrogation, Mr. Coral said that he did not want to talk anymore. (R.1092-93.)

Finally, the coercive language used by Officer Marshall, in essence threatening Mr. Coral

that whether he talked or not would make the difference between prison or the electric

chair, further demonstrates that the alleged waiver was not knowing and voluntary.

2.    The Clore Statement

On or about November 6, 1987, approximately a month after Mr. Coral invoked

his right to the presence of counsel during the Marshall interrogation, Sergeant Clore

of the Illinois police approached Mr. Coral while Mr. Coral was waiting for another

probable cause hearing. (R. 240.) Sgt. Clore was working with the Alabama police and he

16

testified that he knew about the earlier Marshall interrogation. (R. 240.) Sgt. Clore further admitted that he knew that Mr. Coral had an attorney representing him at the probable cause hearing, but chose not to inform counsel of his interest in conducting a further interrogation. (R. 242.)

According to Sgt. Clore, Mr. Coral was in custody, (R. 218), and was advised of his *Miranda* rights but refused to sign the waiver of rights form. (R. 240.) Sgt. Clore testified that he thought Mr. Coral did refused because "he preferred not to sign that form until he had the chance to talk with an attorney" (R. 240.) Mr. Coral respectfully submits that the statement allegedly given to Sgt. Clore should have been suppressed for violations of defendant's constitutional rights under both *Miranda* and *Edwards*.

Initially, the Clore statement was taken after Mr. Coral invoked his right to have counsel present during the Marshall interrogation of October 8th, and Sgt. Clore knew about this interrogation. Wholly apart from Mr. Coral's prior invocation of the right to counsel, the record establishes that Mr. Coral effectively invoked the right to counsel again in this instance.

In *Minnick v. Mississippi*, 498 U.S. 146 (1990), the United States Supreme Court reversed a capital defendant's murder conviction because police officers' failed to abide by the defendant's request for counsel prior to initiating further interrogation. In *Minnick*, the defendant, like Mr. Coral had refused to sign a *Miranda* waiver card, and had, as Det. Marshall admitted here, squarely invoked the right to have any attorney present before further interrogation. *Minnick*, 498 U.S. at 148. In *Minnick*, the Supreme

17

Court rejected the State's contention that the defendant's subsequent consultation with counsel eliminated the Fifth Amendment's protection against further uncounseled interrogation. *Id.* at 156. The Court held that once a suspect invokes his right to counsel, the State cannot initiate a custodial interrogation. *Id.*, citing *Edwards v. Arizona*, 451 U.S. 477 (1981).

In Mr. Coral's case the statements taken by Sgt. Clore (November 6, 1987) and Corporal Jett (November 11, 1987) were initiated by the police and came after Mr. Coral invoked his right to counsel with Det. Marshall. Accordingly, the Clore and Jett statements should have been suppressed because of the State's violation of Mr. Coral's rights under *Miranda* and *Edwards*.

In addition, Sgt. Clore's testimony reveals that Mr. Coral again invoked his right to counsel during the interrogation. Although Sgt. Clore recalls that Mr. Coral allegedly only refused to sign the waiver card without benefit of counsel, his interpretation of Mr. Coral's request as limited to advice on the wisdom of signing the waiver point is beside the point. Once Mr. Coral indicated he needed the assistance of counsel to understand his rights, the interrogation should have ended.

3.    The Jett Statement

Montgomery police officer Terry Jett also took a statement from Mr. Coral on November 10, 1987 after transporting Mr. Coral from Illinois to Alabama. Mr. Coral was alleged to have said, "If you think I did it, prove it." (R. 1043.) This statement should have been suppressed because it was taken after Mr. Coral invoked his right to counsel

18

with Det. Marshall on October 7 or 8, 1987 and after Mr. Coral invoked his right to counsel on November 6th with Sgt. Clore. (R. 1028-29.) The admission of the Jett statement was not harmless error. The prosecution made strenuous and repeated efforts to get this comment before the jury both during direct testimony and on rebuttal. *See* R. 1031, 1099.

**CLAIM B    The State's Tardy Disclosure at Trial of a Witness' Police Statement Was a Brady Violation, petition ¶¶ 20-24.**

The prosecution violated its duty to disclose exculpatory evidence to the defense under *Brady v. Maryland*, 373 U.S. 83 (1963). At trial, the court ordered disclosure of all *Brady* information on August 18, 1988 and again on May 17, l989. However, the prosecution suppressed, until the eve of trial in August 1989, a police statement of a child witness who told the police soon after the murder that he saw the decedent enter her apartment and that she was followed by a white man who entered the apartment with keys. This *Brady* violation was prejudicial for several reasons. The child's contemporaneous account tended to exculpate Mr. Coral, a biracial man, and inculpated the victim's live-in boyfriend, who is white. The defense argued at trial that the victim's boyfriend, Tracy Headley was a much more credible suspect, as he was violent, was the lastperson to see the decedent before her death, had blood compatible with that of the decedent's on his clothes, and had a stormy relationship with her. The child witness's contemporaneous account that the white man got out of a small white car was also consistent with the car Mr. Headley drove.

In addition to concealing this witness from the defense, the prosecution arranged for a psychological examination of the child witness without notice to the defense or to the court. Although Officer Terry Jett testified that he had telephone communications with the psychologist regarding the conclusions he reached after his paid consultation (R.181), no written psychological reports were ever furnished to the State, and therefore of course, to the defense.   When this information was disclosed for the first time just prior to trial, the trial court held that the prosecution had committed a Brady violation and ruled that it had no choice but to grant a short continuance of the trial date of approximately one month. (R. 190.) This remedy, however, was too little and too late.

As a result of the government's violation, Mr. Coral's attorneys were unable to investigate a vital and contemporaneous lead. Second, Mr. Coral was unable to take steps to memorialize this small child's recollection of the events at issue either by means of a statement or tape. Additionally, police records indicate that a tape was made of the child's contemporaneous statement (see R. 184 "this meeting was arranged to go over any and all information previously recorded in the taped statement from John Snoudon and P.J. Snoudon previously recorded."). However the police case agent denied the knowledge of such a tape. (R. 190.)  Had the prosecution timely disclosed the tape, the defense could have verified its existence in l987 rather than trying, two years later, to locate the tape and any law enforcement officers who may have been involved in taking P.J. Snoudon's statement. Similarly, had timely disclosure of the existence of this witness been made, defense counsel could have taken steps to insure that any state psychological examination

be conducted under court supervision, and only for just cause. The *Brady* violation in this case was not cured by the continuance at trial.

The prosecution also committed misconduct by deliberately withholding information about deals made with state key witnesses and other information about witnesses and otherwise concealed material necessary to an adequate defense and mitigation case in violation of the trial court's discovery orders and the United States Constitution. *Brady v. Maryland*, 373 U.S. 83 (1963); *Green v. Georgia*, 442 U.S. 95 (1979); *Giglio v. United States*, 405 U.S. 150 (1972); *Mooney v. Holohan*, 294 U.S. 103 (1935). The State withheld the full statements of witnesses, the identity of potentially exculpatory witnesses, and allowed witness William Braeden to keep Mr. Coral's car and other property of Mr. Coral's in exchange for his testimony against Mr. Coral. (R. 1162) In this case, disclosure of the suppressed evidence would have made a different result reasonably probable. The state's withholding of this information denied Mr. Coral his rights to due process, a fair trial and a reliable sentencing proceeding in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, the Alabama Constitution and Alabama law. *Kyles v. Whitley*, 514 U.S. 419 (1995); *United States v. Bagley*, 473 U.S. 667 (1985); *Green v. Georgia*, 442 U.S. 95 (1979).

**CLAIM C    Coral's Speedy Trial Rights Were Violated, petition ¶¶ 25-26.**

Mr. Coral was incarcerated for twenty-two months without bond prior to his trial. He was arrested in November 1987 and detained without bond until August 1989.

21

Defense counsel moved the court on numerous occasions to dismiss the indictment on speedy trial grounds, as well as to impose a reasonable bail. (R. 109).

The State argued below that a four month delay in order to procure the live testimony of a state forensic witness is attributable to a defense motion for a continuance. The defense simply would not accept a crabbed stipulation from the state's forensic technician as a substitute for live testimony, and the court felt that the defense "had a right to have the live witness." (R. 340). The trial court, however, did not characterize this defense request to have live testimony as a continuance to be charged to the defense. As the trial court clarified to the defense, "You didn't want to put it [the trial] off, you just said you wanted your man here." (R. 334). Thus, the State's effort to avoid responsibility for a four month continuance due to the unavailability of its employee is unavailing.

Mr. Coral suffered prejudice from the denial of his speedy trial rights. Prejudice is measured by the three interests that the speedy trial guarantee is intended to prevent: (i) oppressive pretrial incarceration, (ii) anxiety by the accused, and (iii) impairment of the defense. *Barker v. Wingo*, 407 U.S. 514, 532 (1972). Regarding the first prong, Mr. Coral's twenty-two months of pretrial detention, all but one month of it without bond, qualifies as oppressive pretrial incarceration. Second, the anxiety while awaiting a capital murder trial is present here. Finally, Mr. Coral's defense would have been supported by the child witness' first remembrances of who entered the victim's apartment. Two years later, however, the memory of the child witness was substantially different.

22

The impairment of Mr. Coral's defense was established by the fading memory of an important child witness. The child's memory was substantially different after two years, and Mr. Coral suffered prejudice as a result of the State's failure to provide a speedy trial.

**CLAIM D    Coral's Pretrial Detention Violated the Eighth and Fourteenth Amendments, petition ¶¶ 27-29.**

Mr. Coral was arrested in November 1987 and was detained without bond until August 1989. He submits that incarceration without bond for this length of time is punitive and violates due process, requiring reversal.

The constitutionality of pre-trial detention without bond was upheld by the United States Supreme Court in *United States v. Salerno*, 481 U.S. 739 (1987), when the Court held that the federal preventive detention statute, 18 U.S.C. § 3141, was not facially unconstitutional. More specifically, the court held that because the federal preventive detention statute permitted denial of bail only under narrowly limited circumstances, preventive detention did not violate due process by imposing a punishment upon a defendant not violate due process by imposing a punishment upon a defendant pre-trial. Id. at 747-51.

Critical to the *Salerno* opinion's conclusion was its observation that the "maximum length of pre-trial detention is limited by the stringent limitations of the Speedy Trial Act. Id. at 747. Under the federal Speedy Trial Act, the federal government must bring the defendant to trial within seventy days from indictment. See 18 U.S.C. § 3161. Salerno

reserved ruling on "the point at which detention in a particular case might become excessively prolonged, and therefore, punitive." Id. at 747 n.4.

In this case, Mr. Coral was detained without bond for approximately 650 days. Thus, if the federal speedy trial period of seventy days represents a constitutionally significant time limitation on preventive detention, as the Salerno opinion indicates, then defendant has been preventively detained for more than six times the acceptable constitutional period. Accordingly, the 650-day detention of defendant without bond in this case was punitive and violated the petitioner's due process rights under the Fifth Amendment of the United States Constitution.

**CLAIM E    The Racially Discriminatory Use of Peremptory Challenges at Trial Violated Coral's Constitutional Rights, petition ¶¶ 30-34.**

The State's use of five peremptory challenges against five veniremembers--four blacks and one Hispanic--during jury selection violated Mr. Coral's rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.   The discriminatory practice of excluding qualified jurors violated *Batson v. Kentucky*, 476 U.S. 79 (1986), and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

During jury selection at Mr. Coral's trial, the prosecution used five of its sixteen peremptory strikes to remove black venirepersons. Before the jury was sworn, Mr. Coral objected that these strikes violated Batson. (R. 589-90.) The trial court did not expressly rule that Mr. Coral had established a prima facie showing of discrimination but did

24

require the prosecution to explain its peremptory strikes. (R. 597-98) By requiring that the prosecution explain its peremptory strikes, the court implied that Mr. Coral made a prima facie showing of discrimination and shifted the burden to the prosecution to provide racially neutral reasons for those strikes.

The prosecution offered as a reason for striking Ivan Gonzalez, an Hispanic prospective juror, that "he was not a person that was in our over all plan of what jury we're looking for." (R. 603.) While the prosecution did suggest that it had believed that Mr. Gonzalez was white, and not Hispanic, this assertion is no more than the affirmation of good faith held by *Batson* to be insufficient to rebut a prima facie showing of discrimination. *Batson*, 476 U.S. at 98.

For striking Willetta Martin, the prosecution stated that since Ms. Martin's husband is a minister, "she had a connection with forgiving someone for a wrong, [and] it's the State's position that they should not be forgiven for a wrong but rather should be punished for it." (R. 600.) None of Ms. Martin's voir dire testimony supported this assertion. Further, an assumption that a minister's spouse will be more likely to forgive than to punish is implausible. In many death cases, the prosecution argues on religious grounds that the jury should recommend death. *Cf. Jackson v. State*, 557 So. 2d 855 (Ala. Crim. App. 1990) ("[i]n deciding a *Batson* issue, the importance of a thorough voir dire and the significance of its absence should not escape notice"). Likewise, the prosecution's explanation for striking Lawrence Lee was pretextual: Mr. Lee's possession of a pistol

without a license is a "record linked to the specific allegations in this case with this defendant[.]" (R. 599.)

A prosecutor may not rebut a prima facie showing of discrimination "merely by denying any discriminatory motive or 'affirming his good faith in individual selections.'" Batson, 476 U.S. at 98. The prosecution's bias in jury selection deprived Mr. Coral of a trial by a fairly selected jury panel.

**CLAIM F(1)** **The Guilt Phase Instructions on Reasonable Doubt Violated** *Cage v. Louisiana* **and the Eighth and Fourteenth Amendments, petition ¶¶ 35-37.**

In *Cage v. Louisiana*, the United States Supreme Court held that a criminal defendant's right to due process guaranteed by the Fourteenth Amendment is violated where a reasonable juror could have interpreted a reasonable doubt instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. *Cage v. Louisiana*, 498 U.S. 39 (1990), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62 (adopting a "reasonable likelihood" standard of review for jury claims). In particular, the Court held that even where a jury is instructed that guilt must be found beyond a reasonable doubt, where that instruction equates

> a reasonable doubt with a 'grave uncertainty' and an 'actual substantial doubt,' and state[s] that what [is] required [is] a 'moral certainty' that the defendant was guilty. It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference 'moral certainty,' rather than evidentiary certainty, it becomes clear that a reasonable juror

could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Cage*, 498 U.S. at 41.

 In its guilt phase jury instructions, the trial court charged the jury that 'reasonable doubt' is properly equated with 'substantial doubt.' Moreover, the trial court repeatedly charged the jury that the before returning a guilty verdict, the jurors must be convinced of Mr. Coral's guilt beyond a reasonable doubt and to a moral certainty. In particular, on two separate occasions the jury was charged is such a way that "a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause":

> It is for you to determine, based on the evidence in this case, what really happened. What is the truth of this matter. What have you been convinced of beyond ar reasonable doubt and to a moral certainty, as I will explain those terms in just a moment, and what have you not been convinced of.

R. 1463.

> The measuring stick is a reasonable doubt and to a moral certainty, so it's important that you understand that, and I've already gone over it with you several times. But once again, the doubt which would justify an acquittal must be an actual and substantial doubt. It's not some mere guess or surmise, it's not a forced or capricious doubt. If after considering all the evidence in the case you have an abiding conviction or the truth of the charge, then you are convinced beyond a reasonable doubt and it would be your duty to convict the defendant. The reasonable doubt which entitled an accused to an acquittal is not some mere fanciful, vague, conjectural or speculative doubt, but a reasonably substantial doubt arising from the evidence and remaining after a careful consideration of the testimony and exhibits and reasonable inferences to be drawn therefrom such as any reasonable, fair minded and conscientious man or woman would entertain under all the circumstances. Now you will observe that the State is not

27

required to convince you of the defendant's guilt beyond all doubt but simply beyond all reasonable doubt. If after comparing and considering all the evidence in this case your minds are left in such a condition that you cannot say that you have an abiding conviction to a moral certainty of the defendant's guilt, then you are not convinced beyond a reasonable doubt, and the defendant would be entitled to an acquittal at hands. A jury is said to be so satisfied when it or its members are so satisfied from the evidence that they would be willing to act upon that degree of conviction in matters of the highest importance to themselves personally.

(R. 1492-93.)

Mr. Coral's jurors reasonably could have interpreted the trial court's instructions--which, as in Cage, equate 'reasonable doubt' with 'substantial doubt'--to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. As in Cage, these instructions equate 'reasonable doubt' with 'substantial doubt'. By charging that guilt must be found beyond a reasonable doubt and to a moral certainty, these instructions make it even plainer than in Cage that a finding of guilt would be allowed on a degree of proof below that required by the Due Process Clause. In addition, the trial court shifted the burden to the defense by charging the jury that it must "justify" an acquittal:

But once again, the doubt which would justify an acquittal must be an actual doubt and substantial doubt.

(R. 1491.)

While this instruction is subject to an interpretation which removes the ordinary meaning of 'justify', a reasonable juror certainly could have interpreted the instruction to mean that the defendant had to show that no reasonable doubt existed before an acquittal

28

could be returned, thereby violating Mr. Coral's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Mr. Coral was prejudiced by having a jury considered his guilt as a standard lower that reasonable doubt.

**CLAIM F(2)  The Penalty Phase Reasonable Doubt Instructions Violated Cage v. Louisiana and the Eighth and Fourteenth Amendments, petition ¶ 38.**

The penalty phase jury was charged that in its deliberations, it should employ the guilt phase instructions equating 'reasonable doubt' with 'substantial doubt.' The trial court began its instructions to the penalty phase jury:

> Ladies and gentlemen, it is my duty again to instruct you and charge you as to the law. In charging you I want to remind you of the instructions that I gave you yesterday concerning this matter in the guilt stage, concerning the basic law in defining the terms of reasonable doubt and moral certainty as well as your duties and functions as jurors.

(R. 1686-87.)

Because a reasonable juror could have interpreted this instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause, Mr. Coral's sentence of death must be reversed.

**CLAIM G      The Presence of a Victim's Relative at the Prosecution's Table at Trial Denied Coral a Fair Trial, petition ¶¶ 39.**

Throughout Mr. Coral's trial, a member of the victim's family sat with the  prosecution team. (R. 612.) The constant presence of a family member of the victim at the prosecution's table violated Mr. Coral's Sixth and Eighth Amendment rights.  While there is no federal case law prohibiting a victims' representative from sitting at counsel

29

table, the constant presence of a family member of the victim at the prosecutor's table violated Mr. Coral's federal and state constitutional rights, Mr. Coral submits that this practice violates the spirit and intent of *South Carolina v. Gathers*, 490 U.S. 805 (1989).

Under these circumstances it cannot be doubted that a victim's relative's presence "can all too easily lead to a verdict based on vengence and sympathy as opposed to reasoned application of rules of law to the facts." *Fuselier v. State*, 468 So.2d 45, 53 (Miss. 1985) (trial court should not have permitted victim's daughter to remain within the bar of the courtroom); *see also State v. Henry*, 198 So. 910, 921 (La. 1940)(presence of victim's family at counsel table prejudicial to substantial rights of accused); *Walker v. State*, 132 Ga.App. 476 (1974)(presence of victim's mother at counsel table must have had prejudicial impact; could not say presence not prejudicial to fair trial rights of defendant).

**CLAIM H    The Trial Court's Penalty Phase Mitigation Instructions Violated *Mills v. Maryland* and the Eighth and Fourteenth Amendments, petition ¶¶ 40-41.**

In *Mills v. Maryland*, 486 U.S. 367 (1988), the United States Supreme Court held unconstitutional instructions which a reasonable juror could interpret as requiring unanimous findings by the jury on the absence or presence of mitigating factors. In the instant case, because a reasonable juror could have interpreted the penalty phase jury instructions to mean that a mitigating circumstance could be considered only if each the jurors believed it existed, Mr. Coral's sentence of death must be reversed. (*See* R. 1689, 1700-01.)

30

By failing to charge Mr. Coral's penalty phase jury that it need not unanimously find that a particular mitigating circumstance exists before individual jurymembers could consider it, the trial court left room for a reasonable juror to conclude that a unanimous finding of the mitigating factor must occur before he or she could consider it in deliberating on the appropriate sentence for Mr. Coral. This violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution and his sentence of death must be reversed.

**CLAIM I(1) The Prosecution Improperly Argued that Its Version of the Events Was the Truth, petition ¶ 43-44.**

The prosecution argued repeatedly that its version of events was "the truth," violated the prohibitions against injecting personal opinion into the proceedings and against vouching for one's witnesses. This misconduct was aggravated by the prosecution's informing the jury that it had evidence--but was not "allowed" to present it--demonstrating Mr. Coral's guilt. (R. 1443) The prosecution committed misconduct in making the following guilt phase closing remarks:

> I mean we are here-- and there's some difference of opinion on this, but we are here to seek the truth. Now remember at one point Mr. Travis said how the State of Alabama is here to --I think, you know, to present evidence and seek the truth, and that is exactly why we are here --to seek the truth. As opposed to what Mr. Travis said a couple of times their role is was to show a reasonable doubt or suggest a reasonable doubt. We are here to give you the evidence, what we can find, what we are allowed to give you, and then say there it is. You do what you're supposed to do.

(R. 1423.)

31

Mr. Travis made the statement nobody in this courtroom would want to do your job. I would love to do your job. If you could sit in there and hear all the evidence and say I'm gonna find the true verdict, I'm gonna sift through the bull -- if you'll excuse the expression -- and I'm gonna get to it. Like the woman said on the old Wendy's commercials" Where's the beef? Sift through all the stuff that they've thrown at you and go to everything that shows you that the defendant did it.

(R. 1430.)

And if they were so interested in you getting the truth and they knew the different versions of the story then why didn't they ask him if the person that committed the murder was in the courtroom? Why did I have to ask him, if they were so interested in you hearing all this like he would have you believe? They were interested in you hearing the story they wanted put in his mouth and him say yeah, yeah, yeah, yeah.

\*   \*   \*

You say him testify, you saw how proud he was that he told the truth, didn't you. He was so proud of himself and everyone else in the courtroom was, too. Well almost everyone else. He told the truth.

(R. 1433.)

And the defendant said it looks like thirty-eight. And that was what was in his statement and that's what he said but they would have you believe that he said it's got a long barrel, and it just wasn't in there and you heard it. And attempt at getting something out that just wasn't there. Turn your attention away from the truth. Well, the truth is he said it was a thirty-two and that's what he had. The truth is that he told Jerome Hamilton that he had the gun here and that he needed money to get back and that he knew a place where he could rob with this old woman, and that he would kill her if he had to. That's the truth.

(R. 1435.)

You know, whatever people do you can put the truth in a basket and you can drop it down in the ocean and you can tie it up, but it's gonna come out. And the person with the key in this case - at first I thought it was Bill

32

> Braden. Well, Bill Braden does tell you that he said he did it, and that is obviously very important. And you saw him testify and you heard him, the way he testified. You knew he [was] telling the truth. You know, when he was describing the gun couldn't you see that gun? I could.

(R. 1442.)

> When you do what we are asking you to do then go back there and find the truth, you'll go back there and talk. *** [A]nd when you've got that truth in your mind you say I want to talk to you about this truth that I know, and this is how I know it. And then another person will say you're right. And you'll be talking about that truth and somebody else will say here's another truth we know, isn't it? And you'll keep talking about it and before long there'll be twelve of you that'll say you're absolutely right. He did it. He did it. We heard the evidence, we've got the evidence, we will do our duty now. We will find him guilty as charged of the capital murder of Nancy Burt.

(R. 1445.)

This misconduct was further aggravated by the prosecution's improper suggestion that

one of its key witnesses was particularly credible:

> Lonny [*sic.*] Harden. I love listening to Lonny Harden give his qualifications because that man is so qualified. He's taught in Great Britain, he's taught all over the world, he knows his stuff. And you heard what he said.

(R. 1428.)

### CLAIM I(2) The Prosecution Improperly Argued that An Eyewitness Told the Truth When It Knew that the Witness' Testimony Was, In Part, False, petition ¶ 44.

The prosecution's misconduct in arguing that its version of events was the truth was

further aggravated by the improper argument that a purported eyewitness was telling the

truth:

> But the key in this case as you know is P.J. Because they say we don't have anybody that can put him at her apartment. Well, yes, we did. Yes, we did. Because he came in and sat

> on that stand and you heard him testify, and that little boy is
> not gonna lie to you.  It was obvious that he was telling the
> truth and trying so hard.

(R. 1443.)  Here the prosecution made use of testimony by a critical witness which it

knew or should have known was false.  The State argued during its guilt-phase closing

that witness P.J. Snowden told the truth on the stand when it had statements directly

contradicting the child's trial testimony.  (R. 1445.)

**CLAIM I(3) The Prosecution Improperly Commented Upon Coral's Right Not to
Testify, petition ¶¶ 45-46.**

In addition to vouching for the truth of its versions of events and for some particular

witness' veracity, the prosecution committed reversible error during his sentencing phase

closing argument by commenting on Mr. Coral's exercising his right not to testify.  The

prosecution made the following prejudicial remarks:

> You know on September 18th and since then he has made many people cry.
> I have not heard, as was suggested by Mr. Travis in his opening statement,
> the reason for this crime.  You're gonna get to know this man and maybe
> understand why it was committed. I don't understand it.

**CLAIM I(4) The Cumulative Effect Of the Allegedly Improper Remarks, petition ¶
46**

These errors by the prosecution individually and collectively denied petitioner due

process of law and a fair trial and sentencing determination.  A prosecutor must avoid any

improper methods that might result in an unreliable or unjust verdict.  *Berger v. United

States*, 295 U.S. 78, 88 (1935) ("while [the prosecutor] may strike hard blows, he is not at

34

liberty to strike foul ones."). Had these errors not been committed, Mr. Coral would have not received a capital murder conviction and the death penalty.

**CLAIM J(1) The Judicial Override Violated Coral's Sixth, Eighth and Fourteenth Amendment Rights, petition ¶¶ 47-51.**

The trial court imposed a sentence of death upon petitioner after the jury returned a verdict of life imprisonment without parole at the penalty phase. It was error for the court to impeach the jury verdict and to reject its deliberated decision for life imprisonment without parole in this case. Ala.Code § 13A-5-47 (1975), which permits standardless override by a trial court of a jury's capital sentencing determination, violates the Sixth, Eighth and Fourteenth Amendments.

The sentence of death was based on improper considerations such as an inadmissible presentence investigation report and improper argument by the prosecution. See supra. Rejection of the jury verdict without any reasonable basis or standard and imposition of a death sentence in this case violated the Eighth and Fourteenth Amendments and Alabama law, particularly because, in rejecting the jury verdict, the court adopted the state's factfindings and proposed order.

An Alabama jury's role in sentencing is constitutionally guided and statutorily mandated. The capital statute contemplates that juries play a significant role in capital sentencing. *Beck v. State*, 396 So. 2d 645 (Ala. 1980) revised Alabama's capital sentencing proce-dures. In *Beck*, the Alabama Supreme Court noted that "[t]hroughout Alabama's history, juries have played a major role in capital cases. . ." *Beck*, at 659. After reviewing the

35

history of the death penalty in Alabama and refusing to eliminate jury participation in capital sentencing proceedings, the Court held that the legislature intended there to be jury participation in these proceedings.

Alabama's appellate courts have continued to acknowledge the major role juries play in capital sentencing. *See Prothro v. State*, 370 So. 2d 740, 743 (Ala. Crim. App. 1979) (jury function in capital cases has been "assiduously . . . guarded" throughout the years). *See also Ex parte Williams*, 556 So. 2d 744 (Ala. 1987) (although sentencing judge did not consider improper aggravating circumstance considered by the jury, jury's consideration of aggravator was error and cannot be harmless because jury plays a significant role in sentencing process); *Hallford v. State*, 548 So. 2d 536 (Ala. Crim. App. 1988) (jury must be given limiting instruction on heinous, atrocious or cruel aggravating factor); *Guthrie v. State*, 616 So. 2d 914, 932 (Ala .Crim. App. 1993) (improper argument is "clear infringement upon the jury's important and critical discretion in determining whether to recommend a sentence of death or of life imprisonment without parole.")

Although the United States Supreme Court has held that Alabama's sentencing scheme is constitutional on Eighth Amendment grounds, the Court left open whether standardless override violated the Fourteenth Amendment. *Harris v. Alabama*, 513 U.S. 504 (1995). A mechanism for imposing the death penalty in Alabama that does not require any standard or guided discretion cannot be considered appropriate under the Eighth Amendment. Therefore Mr. Coral contests the ability of a trial court to reject a determination by the "conscience of the community on the ultimate question of life or death."

*Witherspoon v. Illinois*, 391 U.S. 510, 519 (1968).   As applied in Mr. Coral's case, Ala. Code § 13A-5-47 violated his rights to due process and a reliable sentencing hearing in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**CLAIM J(2) The Trial Court's Rejection Of The Jury Verdict Of Life Without Parole Violates the Supreme Court's Holding In *Ring v. Arizona*, petition ¶ 48**

Given the status of the law at this time Mr. Coral no longer asserts that his override challenge, to the extent that it is based on *Ring*, is a claim to which he can establish the right to habeas corpus relief.  *See Schriro v. Summerlin*, 524 U.S. 348, 358 (2004).

**CLAIM J(3) The Judicial Override In Coral's Case Was A Violation Of The Equal Protection Clause, petition ¶ 49**

**CLAIM J(4) Alabama Has No Mechanism To Insure That Defendants Sentenced To Life Without Parole Are Treated Alike, petition ¶ 50**

**CLAIM J(5) Alabama Appellate Courts Have Not Developed A Mechanism For Determining When An Override Is Appropriate, petition ¶ 51**

Claims J(3), J(4) and J(5) are discussed together here.  The Alabama death penalty statute provides no guidance for how to consider or give effect to the jury's decision to spare a capital defendant's life. ALA. CODE  § 13A-5-47(d).   As a result, the trial court in Mr. Coral's case did not have any direction on how to treat the jury verdict, in direct violation of the Equal Protection Clause mandate that equally situated persons be treated equally. Only recently has Alabama made any references to any standards or norms for reviewing judicial override. At the time of Mr. Coral's case no norms or standards    *Harris v.*

*Alabama*, 513 U.S. 504, 524 (1995) ("Alabama stands alone among the States in its refusal to constrain its judges' power to condemn defendants over contrary jury verdicts.") (Stevens, J. dissenting).    Only three other states — Indiana, Florida and Delaware — permit a trial court to override the jury's capital sentencing verdict and impose a sentence of death.    However, unlike Alabama's statute, which simply requires that a trial court "consider" the jury's verdict, both of these states place strict restraints upon the trial court's discretion to reject the jury's verdict.    *See e.g.*, *Tedder v. State*, 322 So. 2d 908 (Fla. 1975) (trial court may override jury life verdicts only if "the facts suggesting a sentence of death are so clear and convincing that virtually no reasonable person could differ"); *Chavez v. State*, 539 N.E. 2d 4 (Ind. 1989) (judge may override a jury's life recommendation if the "facts justifying a death sentence should be so clear and convincing that virtually no reasonable person could disagree that death was appropriate").

 The United States Supreme Court, in upholding Florida's override provision, specifically "recognized the significant safeguard the *Tedder* standard affords a capital defendant." *Spaziano v. Florida*, 468 U.S. 447, 465 (1984); *see also Dobbert v. Florida*, 432 U.S. 282, 295 (1977) (*Tedder* rule was the "crucial protection" against arbitrary or standardless override) (Rehnquist, J. ); *Proffitt v. Florida*, 428 U.S. 242, 252 (1976) (joint opinion of Stewart, Powell, Stevens, JJ).    As evidenced by the judicial override that existed at the time of Mr. Coral's trial, the Alabama statute lacks such a protective measure, and resulted in a violation of the Equal Protection Clause of the Fourteenth Amendment

because trial courts were allowed to reject jury verdicts without satisfying the minimum requirement of non-arbitrary treatment of such verdicts.  As a result, similarly situated defendants have not been treated alike when it comes to judicial consideration of a jury's life-without-parole verdict.

Override in Alabama results in the arbitrary and capricious imposition of death sentences because the trial courts are allowed to reject jury verdicts without satisfying the minimum requirements for non-arbitrary treatment of such verdicts.  The abiding principle of the Fourteenth Amendment's Equal Protection Clause is that "the guaranty of equal protection of the laws is a pledge of the protection of equal laws." *Skinner v. Oklahoma*, 316 U.S. 535 (1942).  That is, when dealing with a fundamental right, such as the right to vote, or in this case the right to life, *see Ford v. Wainwright*, 477 U.S. 399, 409 (1986), "lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." *Harper v. Virginia State Board of Education*, 383 U.S.  663 (1966) (Douglas, J.)

Judges reject jury life verdict in Alabama for a variety of reasons or for no reason at all. *See  Duncan v. State*, 575 So. 2d 1198 (Ala. Crim. App. 1990) (court considered it important to "subscribe to the deterrent value of the death penalty."); *Jones v. State*, 456 So. 2d 366, 379 (Ala. Crim. App. 1983) (court wished to "follow [his] own conscience"). Some trial courts consider a life verdict a mitigating circumstance, while others have rejected a life recommendation as a mitigating circumstances.  *Compare Ex parte Burgess*, No. 1980810 *7, 10 (Ala. Aug. 25, 2000) (trial court found that "a mitigating

circumstances does exist with respect to the sentencing recommendation made by the jury" and gave "significant amount of mitigation to the fact that the jury recommended life."); *Musgrove v. State*, 519 So. 2d 565, 585 (Ala. Crim. App. 1986), *aff'd*, 519 So. 2d 586 (Ala. 1988) (life recommendation of jury is a mitigating circumstance); *Murry v. State*, 455 So. 2d 53, 73 (Ala. Crim. App. 1983), *rev'd on other grounds*, 455 So. 2d 72 (Ala. 1984) (same) *with Jones v. State*, 456 So. 2d 366 (Ala. 1983) (no mitigating circumstances found by trial court, despite jury's life recommendation); *Crowe v. State*, 485 So. 2d 351 (Ala. Crim. App.), *rev'd on other grounds*, 485 So. 2d 373 (Ala. 1984) (same).    In this case, the trial court considered the jury verdict but did not give it "mitigating" weight. (P.C. 203)   This inconsistent treatment of a jury verdict of life without parole makes clear that the procedures that have been implemented by the State of Alabama for the imposition of a sentence of death in the face of a contrary jury verdict "do not satisfy the minimum requirement for a non-arbitrary treatment . . . necessary to secure the fundamental right," as "the problem inheres in the absence of specific standards to ensure its equal application."  *Bush v. Gore*, 531 U.S. 98, 106 (2000); *see also Minnick v. Anderson*, 151 F. Supp. 2d 1015, 1038 (N.D. Ind. 2000) (where trial court overrode jury verdict, habeas relief granted; court stated that "the way in which the Supreme Court of Indiana has dealt with death penalty cases where a judge imposes that penalty in the face of a contrary jury recommendation raises serious equal protection issues under Amendment XIV of the Constitution of the United States").

It is usually impossible to tell how the sentencing judge considered the jury verdict or the reason the court rejected it.  Without requiring sentencing judges to conform to some standard for consideration of jury verdicts in capital cases — without requiring that equally situated defendants be treated similarly — little can be said regarding the legitimacy of override determinations.  The constitutional requirement that there be "measured, consistent application" of the death penalty and "fairness to the accused," *Eddings v. Oklahoma*, 455 U.S. 104, 110-111 (1982), and the correlative command of the Equal Protection Clause, are clearly violated..

**CLAIM K     The Trial Court's Consideration of a Prejudicial Presentence Report Violated Coral's Constitutional Rights, petition ¶¶ 52-55.**

Prior to sentencing Robert Coral to death, the trial court considered a presentence investigation report prepared by the Alabama Board of Pardons and Paroles.  (R. 1926) This report was inadmissible and highly prejudicial to Mr. Coral.

It included an alleged synopsis of the case, although there is no indication that the author was present for any or all of the trial, as well as the author's personal commentary about the crime and the petitioner.  It contained unsubstantiated hearsay comments about petitioner's reputation which were not used to rebut any evidence adduced at trial.  The report included an attachment with discussed the emotional impact of the crime on the victims' family in violation of Alabama law.

Also included in the presentence report were a list of arrests that occurred while petitioner was a juvenile.  It was reversible error for these arrests to have been considered at the sentencing hearing, *Freeman v. State*, 555 So. 2d 196 (Ala. Crim. App. 1988),

41

particularly in light of the court's rejection of the jury's life verdict. These convictions should not have been used to rebut the mitigating factor of no significant criminal history. The inaccurate and inadmissible statements contained in this presentence report were prejudicial to petitioner and deprived him of a reliable sentencing determination. *Gardner v. Florida*, 430 U.S. 349 (1977). The presentence report did not meet the requirements for reliability and neutrality guaranteed by the Supreme Court in *Gardner v. Florida*, 430 U.S. 349 (1977) and *Proffit v. Wainwright*, 685 F.2d 1500 (11th Cir. 1982), *modified on rehearing*, 706 F.2d 311 (11th Cir. 1983). Had the report not contained improper evidence, Mr. Coral would likely not have been sentenced to death. His rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and under Alabama state law were violated by the prejudicial presentence report.

**CLAIM L**        **The Jury Pool from which Coral's Jury Was Selected Underrepresented African-Americans, petition ¶¶ 56-58.**

Mr. Coral was entitled under state and federal law to consideration by a grand and traverse jury chosen from a pool that represented a fair cross section of the community. Ala. Code §12-16-55 (1975); *Taylor v. Louisiana*, 419 U.S. 552 (1975); *Thiel v. Southern Pacific Co.*, 328 U.S. 217 (1946). However, his jury pools were selected in a manner which did not comport with constitutional guarantees and did not reflect a fair cross section of the community.

The traverse jury venire from which Mr. Coral selected his jury was composed of 52 persons of color. The race of one venireperson, Johnnie Knox, was unknown. Even assuming that Mr. Knox was a person of color, the traverse jury pool was 24.3% persons

of color.  In 1988, the population of Montgomery County was 44% persons of color.

1988 Alabama Vital Events, Alabama Department of Public Health: Est. population of

Montgomery County.  The disparity between the percentage of persons of color in the

jury venire and the percentage of persons of color in Montgomery County is statistically

significant in showing that the method of selecting venirepersons leads to

underrepresentation of persons of color.

The percentage of blacks, women, and poor people on the venires for the grand jury and

traverse jury was significantly less than the percentage that those groups comprise of the

total population in Montgomery County.  The selection of the venires violated Mr. Coral's

rights under the Sixth, Eighth and Fourteenth Amendments to the United States

Constitution.

**CLAIM M    Mr. Coral's Death Sentence Was Sought and Imposed Pursuant to a
Pattern of Racial Bias, petition ¶¶ 59.**

The victim in this case was white.  The death penalty was sought and imposed against

Mr. Coral in part because of her race and status in the community. The death penalty was

sought and imposed against Mr. Coral because of the victim's race and status in the

community.  Had the victim in this case been poor or black, petitioner would likely not

now be under a sentence of death.  Although approximately 62% of all homicide victims

in Alabama in the periods between 1983-1987 were of non-white victims, in 1990

approximately 82% of the persons sentenced to death in Alabama were convicted of

killing a white person.  Only 4% of the reported Alabama homicides during this period

involved white victims and black offenders.  1983-1987 Homicide and Rape Report,

43

Alabama Criminal Justice Information Center.  In Montgomery County fewer than 25% of the victims of capital murders in cases where the death penalty was sought were persons of color.  The death penalty is sought in the State of Alabama in an arbitrary and capricious fashion and pursuant to a racially discriminatory pattern in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.  *See McCleskey v. Kemp*, 481 U.S. 279 (1987).

**CLAIM N    Coral's Fair Trial Rights Were Violated By the Trial Court's Refusal to Grant Individually-Sequestered Voir Dire, petition ¶ 60.**

Mr. Coral's fair trial rights were violated by the failure of the trial court to allow full individually sequestered voir dire.  Questions other than those about publicity were addressed to the panel as a whole, thereby tainting all of the jurors with knowledge that only one of them may have had.  Collective examination of the venire in a sensationalized case such as this one makes real inquiry into the ability of a juror to be impartial meaningless.  Mr. Coral was also prejudiced by the denial of his motion for individual questioning of potential jurors which should have been granted in full.  Mr. Coral was prejudiced by the trial court's failure to grant individually sequestered voir dire.  The constitutional guarantee of a fair trial by an impartial jury requires that jurors not come into the trial proceedings with opinions or beliefs about the defendant's guilt which have been improperly shaped or formed by pretrial publicity.  A juror must render a verdict based solely on the evidence presented in court.  *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). In capital cases, individual sequestered voir dire is necessary to uncover any biases or

prejudices that the jurors may have. *See e.g.*, *Ex parte Beam*, 512 So. 2d 723, 724 (Ala. 1987); *Trujillo v. Sullivan*, 815 F.2d 597, 607 (10th Cir. 1997).

The trial court's refusal to grant individually sequestered voir dire in this case violated Mr. Coral's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**CLAIM O(1)**      **Mr. Coral Was Denied the Effective Assistance of Counsel Because of Alabama's Capital Compensation Scheme, petition ¶¶ 62-64.**

Mr. Coral was denied effective assistance at trial by the insufficient funding provided by the State of Alabama for the compensation of capital defense attorneys, defense expert assistance and for other defense expenses.  The rate paid to attorneys defending death cases hinder counsel from providing effective assistance because of the extremely low funding provided by the state of Alabama for the compensation of capital defense attorneys and for their expenses.  At the time of Mr. Coral's trial, under Ala. Code §15-12-21(d) (1975), the State of Alabama paid capital counsel only $40 per hour for time spent in court and $20 per hour for time spent out of court for a total of up to fifty hours.

Alabama Code §15-12-21 limited court-appointed attorneys trying capital cases to a maximum of $1000 for out-of-court trial preparation for each phase of the capital trial. *See Ex parte Grayson*, 479 So. 2d 76, 79-80 (Ala. 1985).

The restrictions on compensation placed significant constraints on what Mr. Coral's counsel could do to investigate adequately and prepare his case for trial.  Trial counsel in this case, for example, did not interview any of Mr. Coral's family members from

Chicago, Illinois, Mr. Coral's hometown. One of the barriers to the lawyers being able to spend more time in Illinois speaking with Mr. Coral's family was the lack of funds to do so. Additionally, the low funding allotted to lawyers, such as Mr. Coral's, amounted to a taking of their property without just compensation, in violation of the Fifth Amendment to the United States Constitution.

Trial counsel could not adequately defend Mr. Coral with the compensation that was afforded in this case. The payment scheme under which Mr. Coral's counsel was compelled to work created a disincentive for attorneys to adequately represent capital clients. It is well-established that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Griffin v. Illinois*, 351 U.S. 12, 19 (1956). The compensation scheme, at the time of Mr. Coral's trial, violated the separation of powers doctrine, constituted a taking without just compensation, deprived indigent capital defendants of the effective assistance of counsel, and offended the Equal Protection Clause and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

### CLAIM O(2)    Coral's Trial Counsel Was Ineffective for Failing to Object Adequately to the Override of the Jury's Sentence, petition ¶¶ 65-66.

Trial counsel was ineffective to not object to the trial court's override of the jury's 11-1 life recommendation and imposition of a death sentence. The override was based on improper findings regarding aggravating and mitigating circumstances. Had counsel properly objected to the errors

46

of the sentencing authority in its analysis of the mitigating and aggravating circumstances, the jury's recommendation would have been followed, and Mr. Coral would not have been sentenced to death.

Counsel was additionally ineffective by failing to object to the constitutionality of the Alabama capital statute which permits the sentencing authority to override a jury's life recommendation without application of any standards whatsoever, and without a clear and reasoned basis for the sentencer's decision to override the jury's life recommendation. Trial counsel failed to object adequately to the impropriety of the trial court's rejecting the jury life verdict in this case, including its improper reliance on invalid aggravating circumstances and rejection of certain mitigating circumstances. Had counsel properly objected to Alabama's capital sentencing system, marshaling constitutional arguments as to why Alabama's standardless override is unacceptable, then the sentencing authority would have followed the jury's life recommendation, and Mr. Coral would not have been sentenced to death.

**CLAIM O(3)**      **Coral's Trial Counsel Failed to Investigate Mitigation Evidence by Interviewing Coral's Family Members, petition ¶¶ 67-69.**

47

Trial counsel failed to investigate adequately mitigating evidence for Mr. Coral's sentencing hearings before the jury and the judge. Many mitigating circumstances existed that trial counsel failed to investigate and present. Mr. Coral had many challenges as a young person, but was also loved and respected by his family and friends. However, at his penalty phase and judge sentencing, none of his family members were called to talk about him and his life. Counsel did not interview any of his family members such as his mother, his sister, his cousins or his aunts and uncles, who could have provided information about Mr. Coral's life and background.

"[A] legal decision to forgo a mitigation presentation cannot be reasonable if it is unsupported by sufficient investigation." *Jackson v. Herring*, 42 F.3d 1350, 1368 (11th Cir. 1995). "An attorney must have chosen not to present mitigating evidence after having investigated the defendant's background, and that choice must have been reasonable under the circumstances." *Stevens v. Zant*, 968 F.2d 1076, 1083 (11th Cir.1992); *see also Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) ("[O]ur case law rejects the notion that a 'strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them.").

Trial counsel's failure to investigate and present evidence from Mr. Coral's family meant that his sentencer did not hear available evidence of Mr. Coral's upbringing and good character. Evidence about a disadvantaged background and childhood is unquestionably mitigating, *Penry v. Lynaugh*, 492 U.S. 302, 319 (1992) (citing *California v. Brown*, 479

U.S. 538, 545 (1987) (O'Connor, J., concurring)). However, the jury and judge who were to determine petitioner's punishment never heard it.

Evidence also existed which would have supported a finding that Mr. Coral had a good character, was loved by his family and friends, and had a positive influence on those around him, both as a child an adult. Counsel's failure to investigate and present this evidence constituted ineffective assistance of counsel, and requires that this Court reverse Mr. Coral's sentence of death. *See Blake v. Kemp*, 758 F.2d 523 (11th Cir. 1985) (counsel ineffective to not present character evidence that the defendant was a "man who was respectful toward other, who generally got along well with people and who gladly offered to help whenever anyone needed something."); *Collier v. Turpin*, 177 F.3d 1184 (11th Cir. 1999); *Harris v. Dugger*, 874 F.2d 756 (11th Cir. 1989) (counsel ineffective to not investigate and present evidence regarding defendant's military service, school performance, family, and employment history); *Baxter v. Thomas*, 45 F.3d 1501 (11th Cir. 1995) (counsel ineffective for failing to contact defendant's family members, neighbors or social worker); *Jackson v. Herring*, 42 F.3d 1350 (11th Cir. 1995) (counsel ineffective for failing to contact family members willing to provide mitigating evidence); *Cave v. Singletary*, 971 F.2d 1513 (11th Cir. 1992) (failure to investigate and prepare for penalty phase); *Magill v. Dugger*, 824 F.2d 879, 889 (11th Cir. 1987) (primary duty defense counsel owes to client is to investigate adequately); *Armstrong v. Dugger*, 833 F.2d 1430 (11th Cir. 1987) (failure to investigate in preparation for penalty phase unreasonable); *King v. Strickland*, 714 F.2d 1481, 1490 (11th Cir. 1983) (defense

49

counsel's independent duty to investigate and prepare is central to effective representation). But for counsel's deficient performance, Mr. Coral would not have been sentenced to death.

**CLAIM O(4)**     **Trial Counsel Failed to Adequately Challenge the Underrepresentation of African-Americans in Coral's Jury Pools, petition ¶ 70.**

Mr. Coral's grand and petit jury pools were selected in a manner which did not comport with constitutional guarantees and did not reflect a fair cross section of the community. Trial counsel failed to challenge the disparity between the percentage of blacks, women, and poor people on the venires for the grand jury and traverse jury and the percentage that those groups comprise of the total population in Montgomery County. Mr. Coral was entitled under state and federal law to consideration by a grand and traverse jury chosen from a pool that represented a fair cross section of the community. Ala. Code §12-16-55 (1975); *Taylor v. Louisiana*, 419 U.S. 552 (1975); *Thiel v. Southern Pacific Co.*, 328 U.S. 217 (1946). Had trial counsel adequately challenged the underrepresentation of African-Americans on his jury, the result of his trial would likely have been different.

**CLAIM O(5)**     **Trial Counsel Failed to Adequately Object to the Admission of a Prejudicial Presentence Report, petition ¶ 71.**

Trial counsel failed to adequately object to the inaccurate, prejudicial and inadmissible evidence contained in the pre-sentence report. (R. 1926-32) The report contained information about improper and invalid convictions that led the trial court to find that the mitigating circumstance of 'no significant prior criminal history' did not exist. The report, in its entirety, did not meet the requirements for reliability and neutrality

50

guaranteed by the Supreme Court in *Gardner v. Florida*, 430 U.S. 349 (1977) and *Proffit v. Wainwright*, 685 F.2d 1500 (11th Cir. 1982), *modified on rehearing*, 706 F.2d 311 (11th Cir. 1983).  Had counsel objected to the inclusion of unattributed remarks and unadjudicated conduct, Mr. Coral would have had likely been sentenced to life without parole.

**CLAIM O(6)     Trial Counsel Failed to Adequately Object to Racially Discriminatory Use of the Death Penalty in This Case, petition ¶ 72-73.**

Trial counsel failed to argue that Mr. Coral's death sentence was imposed pursuant to a pattern of race bias.  Mr. Coral was sentenced to death for the killing of a white victim.  This imposition of a death sentence was pursuant to a pattern of racial bias that characterizes the administration of the death penalty in Montgomery County and in Alabama as a whole.  The discretion of the district attorney in choosing which cases to prosecute as death cases – as well as the discretion of the sentencing judge in determining which defendants to sentence to death – were influenced by concerns of the victim's race.

In evaluating the risk that racism may taint the death penalty process, the U.S. Supreme Court has stated that the "question 'is at what point that risk becomes constitutionally unacceptable.'" *Turner v. Murray*, 476 U.S. 28, 36 n.8 (1986) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 308-09 (1976)).  The case law has made clear that under the Eighth and Fourteenth Amendments the influence of racial bias cannot be tolerated in capital cases.  *Id*.; *McCleskey v. Kemp*, 481 U.S. 279 (1987).  Trial counsel should have argued that race bias influenced this case as evidenced by the underrepresentation of

51

African-Americans in the juror pool. Moreover, trial counsel should have argued that had the victim in this case been poor or black, Mr. Coral would not now be under sentence of death. The death penalty is sought in Montgomery County and the state of Alabama in an arbitrary and capricious fashion and pursuant to a racially discriminatory pattern in violation of the Eighth and Fourteenth Amendments to the United States Constitution, the Alabama Constitution and state law.    *McCleskey v. Kemp*, 481 U.S. 279 (1987). Counsel's deficient performance prejudiced Mr. Coral. Had counsel objected to the racially discriminatory use of the death penalty, Mr. Coral would not have been sentenced to death. *Strickland v. Washington*, 466 U.S. 668 (1984).

52

## V.    CONCLUSION

Robert Coral requests that this Court to grant him a writ of habeas corpus and order that he be tried in accordance with Constitution requirements.


Date: August 16, 2006                    Respectfully submitted,

/s/ LaJuana Davis
LaJuana Davis
ASB-0629-D43L
122 Commerce Street
Montgomery, AL  36104
Tel: 334- 269-1803
Fax: 334-269-1806
E-mail: ldavis@eji.org

*Counsel for the Petitioner Robert Coral*

53

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court on August 16, 2006, using the CM/ECF system and that service will be perfected upon counsel for the Respondents, Assistant Attorney General Beth Jackson Hughes, at her listed e-mail address.

/s/ LaJuana Davis
LaJuana Davis

54